The next case this morning is 522.0286, Hilmes v. Germantown Trust and Savings Bank, etc. et al. Arguing for the appellant, Alan Hilmes, is Eric Terlizzi. Arguing for the appellee, Germantown Trust and Savings Bank, is Jennifer Price. Arguing for the appellee, Corey Hilmes, is Mark Weinheimer. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. The appellees have agreed to split their time, 10 and 5, with Attorney Price going first. Please note, only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning. Before we get started, you may see on your screen, I don't know, depending on what you have, but we have with us today Justice McHaney, who is observing the proceedings as he gets his office up and running to join us on the court. And I said this earlier, we welcome him, and to our proceedings today, but I just wanted to make sure you understand, he's here observing. I will do my best to try to watch that time between the appellees, but if you could also do that for me, I'd greatly appreciate it. So, with all that, Mr. Terlizzi, are you ready to proceed? I am ready, Your Honor. Thank you. Then go right ahead. May it please the court and counsel, I'd like to start this argument by, for the record, stating that the trial judge in this case, in my experience, is one of the finest, one of the fairest, and one of the most able trial judges it has ever been my privilege to practice in front of in the more than 40 years that I've been doing this, which goes to show you that no one apparently is perfect. Present panel accepted, of course, because in this case, the trial court simply misapplied the statute of limitations and the laches defense that was asserted by the defendants here. And I guess I should take responsibility for that, for not making a compelling enough argument in the trial court. This comes up on a 619 dismissal, which means, of course, there's no question on the facts. The facts as pled and the complaint are taken as true. And those relevant facts are that in 1980, the dad, Sylvester Hilmes, established a limited partnership. He named himself as general partner and his three boys, each as a one third co-equal limited partner. Two of the boys were minors at the time. It was Kenneth, Alan and Matthew. Those of us of a certain age remember the 1980s and we remember that prime rates were 20 percent or more estate tax and inheritance tax exemptions were low. So whether this limited partnership arrangement was motivated by asset protection or by estate planning purposes, we don't know. We're looking back 40 years. But the point is, it was done. It is a sophisticated arrangement was done through counsel. And the reason I emphasize that is that there's an undercurrent in the defendant's arguments throughout both in the trial court and in the briefs that essentially, well, this was all Sylvester's property anyway. So we can really ignore all the requirements that go along with a limited partnership. Well, counsel, you use the word ignore, isn't that essentially what everyone involved in this did that is these documents were created? They acted like it never had been created. Certainly, Sylvester did. And of course, he was the general partner. And we agree that the limited partners, the partnership agreement stated that it would continue in existence until December 31st, 2009. And it's none of those sons ever asked for an accounting at any time. You're not that this record demonstrates your honor up until the filing of the complaint. So the partnership expired by its terms then on what on what date? 2009, 1231, 2009 is the date that the partnership agreement says its existence terminates. But what we but what significance does that date actually have, your honor? And that is. Essentially nothing, because nothing happened, the partnership was not wound up, no accounting was given, no distribution of either profits or capital assets were given as we sit here today. That partnership on the record in the Clinton County recorder's office still owns a million dollars worth of Clinton County real estate, 135 acres in the partnership name. So, yes, criticism could go all around here that somebody should have done something before. But but that doesn't mean that the statute of limitations or latches bars a cause of action just because it could have been brought earlier. For example, on February 13th, 2020, Sylvester, as general partner, the deed says, as general partner of the limited partnership, sold 30 acres of this partnership land to his grandson. On March 5th, 2021, Sylvester died and then September 2021, this complaint was filed. So essentially what the what the ruling in the appellate and the trial court was is that on 10 years after 123109 and December 31st, 2019. These limited partners no longer had any right title or interest in this property couldn't maintain any kind of cause of action, even for actions happening at that time or thereafter. Now, defendants failed to explain how a cause of action could be eliminated by the statute of limitations before it even arose. Again, this sale to the grandson. Now, it's clear in the pleadings, the plaintiff did not get his one third share. He's the owner of one third of the 30 acres. He there's no way any theory of law equity that somehow the title to this property, which was owned by the limited partners could have somehow vested in in the general partner Sylvester. But as far as we know, and that's why we want an accounting. But as far as we know, Sylvester took the proceeds from the sale of partnership property and and put it in his own pocket. I guess we don't know that he could have given it away, but he sure didn't give it to the limited partners. We do know that. And that's an undisputed fact here. The law is crystal clear. There's no argument in the law that that a general partner was a fiduciary duty of the highest degree of honesty and good faith to the limited partners. In fact, 805 ILCS 215408, which is part of the limited partnership statute. Describes the general partner that he holds the assets as trustee for the limited partners. 215801 states that dissolution activities must upon dissolution the partnership must be wound up. 215803 specifically states that the limited partnership continues as a going concern and the general partner shall settle and close activities and make distribution of assets. So there was not only a contractual duty per the limited partnership agreement, but there was a express statutory duty on the part of Sylvester to wind up and distribute the assets. And this is a continuing duty. This duty didn't stop on 12-3109. In fact, it began on 12-3109. That duty existed in 2010, in 2011, in 2019, in 2020, in 2021 when he passed away. To accept the position of the defendant in the trial court in this matter means that somehow title and ownership of this partnership property went from the beneficiaries to the fiduciary. Now, I don't know how that could happen in 100 years, your honors. It essentially means that the day before Sylvester passed away, which was in March of 2021, he could have made a deed to himself of all of this hundred million dollars worth of real estate still owned by the partnership. And if this ruling is correct, the limited partners would have no cause of action because it would have already been barred before that action was even taking place. So the fundamental flaw here in the decision of the trial court is fixing that date of 12-3109 as a date that the statute started to run and that somehow if action wasn't taken within those 10 years, that the beneficiaries of this limited partnership somehow, I don't know by what theory, but somehow their title to this million dollars worth of land would disappear. Mr. Tlazy, is the gist of your claim or argument against statute of limitations is that the statute governing winding up partnerships is in effect and so this is ongoing until the partnership is completely wound up? Not only the statute, but the partnership agreement itself says it ceases on 12-3109. But if the operative date is December 31st, 2009, do you concede that statute of limitations and latches might be favorable to your claim or do you have another alternative for that? No, it's not because by statute and by the terms of the partnership agreement itself, it continued that the duty on the general partner starts on that date to dissolve and to wind up to account and to make distribution. But if the partners aren't aware of their duty and they don't do anything for 10 years or 20 years, or in your example, 100 years, is there not some end, is there not some latches argument that the partners didn't fulfill their duties and so some cause of action arises at some point? Well, the limited partners don't have a duty. The sole duty is on the general partner, your honor. But he didn't exercise his duty, so who holds him to account? And what's the time frame for holding him to account? And we acknowledged, we acknowledged to the trial court, we acknowledged in our briefs that the statute of limitations and or latches may have some application in this court. It may bar us from going back more than 10 years. He failed to count from 1980 until 2009 also, and we may be barred from going back more than 10 years from the time we filed this complaint. And as a practical matter, I'm sure there's no records from the 80s or 90s or early 2000s anyway, but to suggest that for the ongoing continuous breach in the last 10 years of this written partnership agreement and of his statutory duty, again, just to suggest that somehow that means that he became the owner of this property to sell as he, as he, he sold the land he sold, he sold in his capacity as general partner on the deed itself. It says that his deed that he signed, which means under the statute, he sold it as trustee in 2020. And, and the trial court has held that that's too bad. You know, he can put that money in his pocket. I mean, if a bank was a trustee of a testamentary trust that said it terminates on, on death of the, of the set lore or of a living trust, it says it terminates on the death of the set lore and the bank becomes trustee and you to distribute those assets to my children who are my beneficiaries. And the bank sold assets, put it in the bank's account, took the profits for 10 years and put it in its own account to suggest that the beneficiaries would have, would have no, no remedy, even, you know, as to land sold within a year and a half of the time they filed suit. I mean, I, I, I think is, is, is an absurd result. I mean, title could not have transferred by any mechanism to Sylvester personally. He was a trustee here and to suggest that a fiduciary can somehow through his own breach gain title to a million dollars worth of farmland that he doesn't know. Again, I don't know any theory of law or equity, which would say that, that, that is allowable. Again, the, the, the position here is that, you know, when this suit was, as we stand here today, I mean, a month or two months ago, crops were harvested off this 135 acres that my client, I mean, admittedly owns a third of. He's, you know, who's, where's that money going? I mean, certainly the estate, the representative of the state, Germantown bank. Did not succeed to the position of general partner when a fiduciary dies, his personal representative does not become the successor trustee or successor general partner that's governed by the instrument. So, who has authority over this 135 acres that's still owned by the partnership who owns it? If the, if the real owners who are the, the limited partners have no rights and no causes of action, then who does own it? Certainly the general partner, the fiduciary cannot be the owner and the bank as representative of his estate cannot be the owner and put that money in the estate account. So it's just created an absurd situation. We, we, we are entitled to limited partners are entitled to an accounting for whatever the statutory period is, if it's determined to be 10 years, 10 years, if it's determined to be five years, I mean, I think it's clearly 10 because it was a written contract. But whatever it is, these actions were, the breaches didn't begin that we're trying to seek recompense for did not begin until 2019 and continued, continued in 2020 when he made a deed as, as a general partner of this partnership and continue today as crops are harvested, somebody's farming that land. Under what, under what authority and where's that money going? This partnership still is in existence. It has never been dissolved. Whose fault it is, is really a side question and to some extent is irrelevant. So, in your original complaint, didn't you seek a declaratory judgment that the partnership terminated in 2009? Yes, which would require, I mean, it didn't terminate it's still ongoing and well, it hasn't been wound up it terminated by its express terms, but that then requires before it can be officially dissolve it requires winding up both by the document itself and by the statute. I mean, you know, it can't just disappear into the air suddenly on 123109 that is the termination date and so we're asking the court to declare that should have been that should have triggered the winding up process on 123109 because that was the termination date for the for the partnership agreement. Thank you. Thank you. Thank you, counsel. Justice Vaughn or justice more to have any follow up questions. No, no. All right. And obviously counsel, you'll have your opportunity for rebuttal. Thank you. Miss price. Good morning, your honors. Good morning. Go right ahead. May it please the court. First of all, I wanted to clarify what the standard of review is in this case as far as latches is concerned. Not sure that we want to touch the one about statute of has stated that it is up to the sound discretion of the trial judge as to whether or not latches is applicable. I wanted to start off with that. Second, I think Mr. Terlizzi is kind of conflating two issues here. Counts one and counts three are directed against Germantown Savings Bank. I don't think there's any claim against us for count two, which is about the deed that was referred to. So count one is an action for accounting and count two is an action for breach of fiduciary duty that nothing is being sought about the ownership of this million dollar land other than perhaps in count two, which I'm not going to address. I'm going to leave that to my co-counsel, Mr. Weinheimer, to do that. Well, as I understand it, counsel, latches is an equitable defense. What equitable cause of action are you asserting latches against? Accounting. What's that? Oh, pardon me? The accounting. Okay. We're having a little bit of trouble Miss Price. Okay. Sorry. Can you hear me now? Absolutely. Okay. Against the cause of action for accounting and judge, if you notice in our brief, latches is not just an equitable defense in any event, even if you would construe something as an action at law. The law is now been expanded in Illinois to include latches as a defense against actions at law as well. But in any event, we are not here to determine the ownership of this land. You're updating me from my legal education in 1977. Me too. But in any event, as Mr. Terlizzi alluded, there are ongoing proceedings in the circuit court of Clinton County. That's where the issue of ownership is going to be determined. Right now, what is before this court is whether or not the plaintiff is barred because of his long, unreasonable delay that operated to the prejudice of Germantown Savings Bank being the representative of the estate of Sylvester Hilmes for now bringing, after 40 years, a cause of action against the deceased father, essentially. Now, they make a reference to the fact that Mr. Alan Hilmes, who is the plaintiff in this matter, did not learn of the existence of the partnership until decades later. Well, I want to assert to the court that Judge Brandmeier had before him the pleading as it is, and he was in the position to determine, based on the record, that even construing decades later when Mr. Hilmes allegedly first learned of the agreement, that he obviously should have known, knew or should have known, which is the standard set forth by the Supreme Court in the Pyle case, which I've talked about in my brief, that he or she should have known in sufficient time to bring a cause of action. Now, I want to refer, Eric, or Mr. Terlizzi, excuse me, is making reference to the agreement, and I wanted to note to your honors that had Sylvester Hilmes not complied with the agreement, there was a remedy contained within that agreement for the limited partners, and it's found at A034, that nothing contained in this agreement shall defeat the right of either a limited or general partner to require and to have a court supervise winding up liquidation and dissolution of the partnership. So, that could have been done at any point in time when Alan Hilmes felt that his father was not complying with the terms of the agreement. He could have done it during the existence of the partnership, and he certainly could have done it on the day after the partnership terminated by its own terms on December 31, 2009. He obviously, at that point, knew that his father had repudiated, essentially, or breached, however you want to say it, judge, justices, the terms of the agreement, and I'd like to direct the court's attention to the Seha case, which is cited in the brief, and that's a pretty significant case because it undercuts Mr. the breach. Once a contract has been breached in total, then any further breaches are barred by that initial breach, and we take the position that at the very latest, the breach occurred on 12-31-09, or January 1, 2010, when Mr. Terlizzi says that the winding up process should have taken place. Now, that goes to the statute of limitations argument, and I'm sorry I'm kind of jumping around, but back to latches now. Mr. Terlizzi, in his brief, has said that we haven't pleaded latches, but the law is clear that the judge had the right to determine that latches is applicable to bar it when the face of the complaint establishes latches on its face, and it did, because he pleaded the fact of the long delay, and he pleaded that Mr. Hilmes was deceased by the time that he brought this. Obviously, valuable testimony is going to have been lost by this time when the elderly man passed away. As I stated, his death was no surprise. It wasn't like there was a car wreck and suddenly a young man was killed. This is a situation where it was an elderly man that died with no surprise to anybody. We all die, especially when we're 90, and I hope I live longer than that, but in any event. Additionally, something kind of significant that I should have brought to the court's attention is when this agreement was established, Kenneth Hilmes was alive, now dead. Matthew Hilmes was alive, now dead. Their testimony is lost, too. They were the brothers of Alan Hilmes who were the alleged co-partners of this situation. Another thing that's significant when you look at the agreement, you see that there is no consideration that was given by these boys. There is no allegation in the complaint anywhere that Alan Hilmes either contributed labor or capital to this agreement. You know, Mr. Terlizzi speculated that Mr. Hilmes must have put it all into his pocket. Well, if you can speculate to that, you can speculate who paid for this property, whose property really funded this partnership. I really have said about all I'm going to say at this point, Mr. Terlizzi didn't address the punitive damage count, which I think is quite clear that it would be a great, what do I want to say, expansion of the law to say that under the circumstances of this case, where there's certainly no criminal act involved as in there was in Pemberty v. Price, the drunk driving case, I think it would be a increase to go beyond the survival act to the point of saying that a deceased person can be sued for punitive damages under the situation presented here. If your honors have any questions, I'd be glad to answer them. Otherwise, I'd like to yield my time to my co-counsel. And I appreciate that. Thank you, counsel. Before we move on to co-counsel, Justice Moore or Justice Vaughn, do you have any questions for counsel Price? No questions. Okay. Well, thank you. Thank you. Mr. Weinheimer, go right ahead. Good morning. May it please the court. My co-counsel, Erica Bash is with me in the background. Just wanted to introduce her. I want to speak specifically to count two of the complaint, which is an action for quiet title against Corey Helmus, our client. Corey Helmus is a grandson of Sylvester, has worked with him for decades and has a strong family affinity with continuing the Helmus farming enterprises. The question of latches, I believe, supports the dismissal of the case. The question becomes, was Corey Helmus detrimentally affected by Alan Helmus, his uncle's determination not to bring a claim during the term of the partnership when his brothers had passed, not to bring a claim within 10 years of December 31, 29. But he brought it after Grandpa Sylvester passed. And after Corey Helmus purchased land from Sylvester. Now, Corey Helmus had a reasonable belief that there was no problem with him purchasing land from his grandfather. Corey is prejudiced by the delay in filing this claim. The partnership document itself states that your purchase. This was a purchase by Corey. How much did he pay? I don't have the exact number. I can certainly supplement somehow, but it was an arm's length negotiation and land values in Southern Illinois have been fluctuating. And I don't recall what the per acre price was. I know Corey borrowed money to pay for it. So it was absolutely more than a nominal amount. Is that all in the record? The purchase price is not in the record. No. Is the arm's length transaction that you suggest in the record? I don't believe so. But Corey paid for the property, has been paying real estate taxes on the property, has put improvements on the property at great cost. And the question, I believe, for the latches analysis is, did Corey have a reasonable belief that the transaction with Sylvester was proper? The partnership agreement in Article 12 on page 15 of the distribution of the real estate of the partnership. It's in the plaintiff's pleadings. It's in the partnership agreement. Based on that, based on the fact that Allen didn't for 42 years bring a claim against Sylvester regarding the so-called partnership land, he moved forward. And to allow this claim to affect the title to the property that Corey paid fair value for is inappropriate and should be restricted under the doctrine of latches. And I echo what Ms. Price indicated. The pile factors, I think, clearly apply to count two of the complaint. And I don't have anything else to state other than if this case were allowed to go forward, my question would become, does Alan Helmuth have an ability to bring claims for Sylvester selling grain at a lower price on a Tuesday than a Friday when the market's swinging? Does Alan Helmuth have a claim of action for not selling land when the market was up versus when the market may have been down? Plaintiff's counsel has a tendency to call some of these standards absurd. And I would suggest that may be absurd to allow Alan Helmuth to second guess after 42 years of his father managing the property that was part of the partnership property. I see my time is up. I'll yield. Well, thank you, counsel. Before we move on to rebuttal, Justice Moore or Justice Vaughn, do you have any final questions? No questions. All right. Mr. Terlizzi, go right ahead with your rebuttal. You're on mute, by the way. Again, your honors, it escapes me how a suit brought in 2021 to set aside a deed that was Let me ask you about that, Mr. Terlizzi. Did he really have a one-third ownership in the land? Or do you have a one-third ownership in the partnership? In the partnership, which owned the land. I mean, the deed was from the partnership. There was a provision in the partnership agreement that they could not request partition while they're entitled to his proceeds, right? I mean, they couldn't request my fair share of the land. That's absolutely right. He was not a one-third tenant in common, but he was certainly an equitable owner of an interest in all the partnership property. And you're right, your honor, the partnership interest is deemed personal property. The partnership itself actually owns the real estate. But again, how is it latches when you've brought suit within? I mean, there's no issue raised of standing. That's not the defense here. The defense is latches and statute of limitations. So he had on this record, at least standing to bring the complaint. And again, it escapes me how a year and a half can be latches to bar this claim. And I thought Mrs. Price's argument was interesting because it highlights what we said. The real argument here is that, oh, no harm, no foul. This was really grandpa's property anyway. And he could do whatever he wanted with it. Well, he chose to put it in this limited partnership and to be bound by the terms of that limited partnership. Presumably he got some benefit, again, whether it was asset protection, estate planning, whatever for doing what he did. And he can't have his cake and eat it too. On this record, and we have to decide this case on the partnership existed. It was valid. It was never attacked. It has never been attacked in these pleadings as illusory or anything else. Now, Mrs. Price also indicated the statute starts running when a contract is breached in total. But understand in this case, the obligation, what we're really upset about here and what the suit is really about is the breach of his duty to wind up the partnership, which was both a contractual and a statutory duty. That duty did not even arise until 1231-09. And it continued. And the statute and the contract both provide a reasonable time. And we were talking about a farm partnership that's complicated, that's got over a million dollars worth of farm real estate in it. That's not wound up in a day. He couldn't have brought suit on January 1st, 2020. There had to be a reasonable time to wind it down. And that is without doubt a continuing obligation of the general partner. And the partnership per statute does not in fact cease ultimately until it's wound up and given to its right, the assets provided to its rightful owners, which are the limited partners. So again, we get back, Mr. Price also mentioned the ongoing new other litigation in Clinton County over the ownership. Defendants have cited the result in this case as, as rice judicata to dismiss, to dismiss the case, the new case over the ownership of this property and appoint a new general partner or receiver. So they are arguing that essentially the estate owns this property that the fiduciary has somehow acquired title to this 135 acres of farmland and 30 acres that was sold and has no duty to account, can put it in its pocket and forget the actual equitable beneficial owners. Now, if an attorney holds property and trust for a client, if a trustee there's, there's, I don't care how much time passes, a fiduciary cannot claim title to the property of the beneficiary he owes the utmost duty of loyalty and good faith to. And, and that's essentially what's happened here. Thank you, counsel. Justice Moore, Justice Vaughn, before we conclude today, do you have any questions for counsel? No, no questions. Thank you. Well, counsel, thank you for your arguments today. I believe this takes care of our oral arguments today. So the court will stand in recess until our January docket.